IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SHARON LANG,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 CV 3048 |
| | ) | |
| vs. | ) | Judge Norgle |
| | ) | |
| **BIOGENEX LABORATORIES, INC.**, | ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | |

<u>**VERIFIED ANSWER TO COMPLAINT AT LAW**</u>

Defendant, BioGenex Laboratories, Inc. ("BioGenex"), by its attorneys, Epstein Becker & Green, P.C., answers Plaintiff's complaint as follows.

1.     Sharon Lang ("Plaintiff") was hired by BioGenex Laboratories, Inc. ("Defendant") as a "SR. Application Scientist" in January of 2005.

**<u>ANSWER:</u>**     Defendant admits the allegations of paragraph 1 of the complaint.

2.     Plaintiff began her employment in January of 2005 and worked from her home located at that time in Mundelein, Illinois.  At all times relevant to this complaint in the course of her job duties, Plaintiff serviced Defendant's clients located in Cook County, Illinois.

**<u>ANSWER:</u>**     Defendant admits the allegations of paragraph 2 of the complaint.

3.     Defendant, a California corporation, furnished Plaintiff with a computer, fax machine and cell phone to be used for the purpose of conducting business in Illinois.

**<u>ANSWER:</u>**     Defendant admits the allegations of paragraph 3 of the complaint.

4.    In her capacity as senior application scientist, Plaintiff worked with Defendant's customers regarding the use of certain medical testing devices and reagents.

**ANSWER:**    Defendant admits the allegations of paragraph 4 of the complaint.

5.    In her capacity as a senior application scientist, Plaintiff worked with customers located in Cook County, Illinois, including Rush Presbyterian St. Luke's Medical Center, University of Illinois, Northwestern University and Loyola University Medical Center.

**ANSWER:**    Defendant admits that in her capacity as senior application scientist, Plaintiff worked with customers in Cook County, Illinois but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5 of the complaint.

6.    In March of 2006, Plaintiff was given a yearly performance appraisal of her work which gave her an overall rating of "4"; "usually exceeds targets and position requirements:  above average."

**ANSWER:**    Defendant admits the allegations of paragraph 6 of the complaint.

7.    Under the heading "Job Knowledge," the evaluation noted: 1) strong job knowledge, 2) reference source for all, 3) easily handles any situation.

**ANSWER:**    Defendant admits the allegations of paragraph 7 of the complaint. Answering further, Defendant states that the performance review also pointed out areas in which Plaintiff needed improvement, namely in teamwork and communication.

8.    The evaluation noted under quality of work:  1) work product excellent, 2) organizes everything, extremely efficient, 3) consummate professional, 4) customers request Sharon.

**ANSWER:**    Defendant admits the allegations of paragraph 8 of the complaint.

9.     The evaluation noted under quantity of work:  1) 24/7 player, 2) takes customer call at any time, 3) flexible.

**ANSWER:**     Defendant admits the allegations of paragraph 9 of the complaint.

10.     The evaluation rated attendance and punctuality as follows:  1) 24/7, non-stop.

**ANSWER:**     Defendant admits the allegations of paragraph 10 of the complaint.


11.     The evaluation rated Plaintiff's mind set/attitude as:  "This is an area that is exhausting to an individual who requires others to live up to her expectations. Her devotion to her customers and this company is expressed in her constant seven day work schedule she self imposes."

**ANSWER:**     Defendant admits the allegations of paragraph 11 of the complaint.


12.     The evaluation was agreed to by Plaintiff on March 1, 2006, and approved by Defendant's Human Resources Department on March 6, 2006.

**ANSWER:**     Defendant admits that the evaluation was agreed to by Plaintiff on March 1, 2006 but denies the remaining allegations of paragraph 12 of the complaint.


13.     On March 14, 2006, Defendant gave Plaintiff a merit pay increase.

**ANSWER:**     Defendant admits it gave Plaintiff a merit increase on March 14, 2006, effective January 10, 2006.


14     In 2005, Defendant marketed products known by the trademark Insite™Her2/NeuKit.

**ANSWER:**     Defendant admits the allegations of paragraph 14 of the complaint.


15.     The purpose of this product was to provide information to doctors for the purpose of determining the appropriate regimen of chemotherapy treatment for certain breast cancer cells.

**ANSWER:**     Defendant denies the allegations of paragraph 15 of the complaint.

16.    In September of 2005, Plaintiff advised her superiors of instances in which the products did not provide appropriate data due to improper staining of the membrane resulting from defects in the test kit leading to false positive data regarding the test results which could cause a patient to receive an improper chemotherapy prescription.

**ANSWER:**    Defendant denies the allegations of paragraph 16 of the complaint.

17.    In January of 2006, Plaintiff received stained slides demonstrating the defect from Heartland Pathology in Wichita, Kansas and Loyola Medical Center in Maywood, Illinois which she sent to her superior, Carl Kunkelman.

**ANSWER:**    On information and belief, Defendant admits that in or around January 2006, Plaintiff provided her supervisor, Carl Kunkelman, with slides from customers reflecting staining that could be misinterpreted.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff received these slides from Heartland Pathology in Wichita, Kansas and Loyola Medical Center in Maywood, Illinois.  Defendant denies the remaining allegations of paragraph 17 of the complaint.

18.    Plaintiff attended several meetings with her supervisors and Defendant's employees in the fall of 2005 and January of 2006 where she voiced her concerns as to the problems with the test kits and stated that she believed the product should be recalled.

**ANSWER:**    Defendant admits that Plaintiff attended several meetings with her supervisors and other employees of Defendant in January 2006 where she voiced her concerns about problems with the test kits.  Defendant denies the remaining allegations of paragraph 18 of the complaint.

19.    Following the last meeting with supervisors which occurred in January of 2006, Plaintiff was advised that after January 30, 2006, she should have no further involvement in discussions at Defendant related to Insite™Her2/NeuKits.

**ANSWER:**    Defendant denies the allegations of paragraph 19 of the complaint.

20.    On February 9, 2006, Defendant issued a recall of the product on the basis that the use of Insite™Her2/NeuKits may represent a risk of health injury.

**ANSWER:**    Defendant admits that on February 9, 2006, it initiated a voluntary product recall for the Insite™Her 2/neu IVD device, because it could represent a risk of health injury, and that it advised the U.S. Food and Drug Administration of the recall on that date.

21.    On April 14, 2006, Plaintiff was visited at her home by agents of the Food and Drug Administration and Department of Health and Human Services who were investigating Defendant's compliance with the Federal Food, Drug and Cosmetic Act, 21 USC Ch. 9§301 *et seq.*

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of the complaint.

22.    At the request of the agents, Plaintiff traveled to the offices of the Food and Drug Administration Chicago District Office in Chicago, Illinois, on April 18, 2006.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the complaint.

23.    Plaintiff voluntarily spoke with the agents regarding Defendant's practices and her experience with the Insite™Her2/NeuKits products sold by Defendant.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the complaint.

24.    At the interview, Plaintiff provided documents and materials related to her work and Defendant's compliance with the Federal Food, Drug and Cosmetic Act to the Food and Drug Administration at the request of agents Norman Brown and

Jesse Vasquez at the office of that agency located at 550 W. Jackson Blvd., Chicago, Illinois.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the complaint.

25.    On April 20, 2006, Plaintiff advised her supervisor, Carl Kunkelman, that she had been interviewed by the Food and Drug Administration and had provided information and materials regarding an ongoing investigation of Defendant's activities.

**ANSWER:**    Defendant admits that despite the fact that Plaintiff spoke with her supervisor, Carl Kunkelman, on April 19, 2006, she did not advise him until April 20 that the FDA allegedly came to her home and confiscated her computer and files and that she subsequently spent seven hours with that agency on April 18, 2006.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 25 of the complaint.

26.    Within one hour of her conversation with Carl Kunkelman, he advised Plaintiff that she was on administrative leave and should perform no work until further notice.

**ANSWER:**    Defendant admits that Carl Kunkelman placed Plaintiff on paid administrative leave on April 21, 2006 but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 26 of the complaint.

27.    The next day, April 21, 2006, Defendant terminated Plaintiff's employment.

**ANSWER:**    Defendant admits that it terminated Plaintiff's employment on April 21, 2006 because a background check did not confirm that Plaintiff had a Ph.D. degree

as she reflected on her resume and Plaintiff failed and refused to furnish information to confirm that she had that degree.

28.    On July 27, 2006, the United States Department of Health and Human Services issued a warning letter to BioGenex Laboratories, Inc. regarding adulterated product as defined by Section 501(h) of 21 USC § 351 which specifically listed regulations violated by Defendant in the manufacturing and distribution of the Insite™Her2/NeuKits.

**ANSWER:**    Defendant admits that on July 27, 2006, the Department of Health & Human Services issued a warning letter to BioGenex alleging that devices manufactured by the Defendant were adulterated within the meaning of Section 501(h) of the Act (21 U.S.C. §351), based on an inspection conducted at BioGenics from February 1 through March 9, 2006, due to methods of manufacturing, packing, storage or installation.  The letter referred to deviation from various regulations and HER-1/neu test kits.  Defendant denies the remaining allegations of paragraph 28 of the complaint.

## COUNT I

### Violation of the Illinois Whistleblower Act 740 ILCS 174/1

29.    Plaintiff hereby restates and realleges paragraphs 1 through 28 above.

**ANSWER:**    Defendant restates and realleges its answer to paragraphs 1 through 28 above.

30.    At all times relevant to this complaint, Plaintiff was an employee as defined by 740 ILCS 174/5.

**ANSWER:**    Defendant admits the allegations of Count I, paragraph 30 of the complaint.

31.     Plaintiff's conversations with representatives of the United States government on April 18, 2006, constituted the disclosure of information to a government law enforcement agency as defined by 740 ILCS 174/15(b).

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Count I, paragraph 31 of the complaint.

32.     The termination of Plaintiff's employment on April 21, 2006, constituted retaliation against Plaintiff in violation of 740 ILCS 174/15.

**ANSWER:**     Defendant denies the allegations of Count I, paragraph 32 of the complaint.

33.     As a direct and proximate cause of the termination of Plaintiff's employment on April 21, 2006, she suffered damages including loss of income and benefits as described by 740 ILCS 174/30.

**ANSWER:**     Defendant denies the allegations of Count I, paragraph 33 of the complaint.

## COUNT II

### Claim For Retaliatory Discharge

34.     Plaintiff hereby restates and realleges paragraphs 1 through 33 above.

**ANSWER:**     Defendant restates and realleges its answer to paragraphs 1 through 33 above.

35.     At all times relevant to this matter, Defendant's business of preparing and selling various types of medical detection testing devices was subject to the provisions of and required to conform to 21 USC Ch. 9 §301 *et seq.* of the Federal Food, Drug and Cosmetic Act.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Count II, paragraph 35 of the complaint.

36.    The Federal Food, Drug and Cosmetic Act is a law passed as part of the public policy to keep interstate commerce free of adulterated products to the end that public health and safety might be advanced and for the purpose of public health.

**ANSWER:**    Defendant admits the allegations of Count II, paragraph 36 of the complaint.

37.    Specifically, 21 USC Ch. 9 §351(h) deals with standards and requirements for the manufacture of medical devices such as those sold by Plaintiff in the course of her employment by Defendant at all times relevant to this complaint.

**ANSWER:**    Defendant denies the allegations of Count II, paragraph 37 of the complaint.

38.    At various times from the fall of 2005 through January of 2006, Plaintiff complained to her superiors of problems with a specific medical testing device, the Insite™Her2/NeuKit, which was sold by Defendant to hospitals and physicians.

**ANSWER:**    On information and belief, Defendant admits that in January 2006, Plaintiff complained to her superiors about problems with a specific medical testing device, the Insite™Her2/NeuKit, that was sold by Defendant to hospitals but denies the remaining allegations of Count II, paragraph 38 of the complaint.

39.    On April 18, 2006, Plaintiff went to the office of the Food and Drug Administration and provided statements and evidence to that agency regarding the problems with the Insite™Her2/NeuKits.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Count II, Paragraph 39 of the complaint.

40.    The Food and Drug Administration officers who interviewed Plaintiff were investigating violations of the Federal Food, Drug and Cosmetic Act, 21 USC Ch. 9 §301 *et seq.* by Defendant.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Count II, Paragraph 40 of the complaint.

41.    On April 20, 2006, Plaintiff advised her supervisor, Carl Kunkelman, that she had been in the interview and cooperated with the investigators' requests.

**ANSWER:**    Defendant admits that Plaintiff advised her supervisor, Carl Kunkelman, on April 20, 2006 that she allegedly was interviewed by the FDA but denies the remaining allegations of Count II, paragraph 41 of the complaint.

42.    On April 21, 2006, Plaintiff was terminated from her employment in retaliation for her cooperation with the agents conducting the investigation.

**ANSWER:**    Defendant denies the allegations of Count II, paragraph 42 of the complaint.

43.    The termination of Plaintiff's employment in retaliation for her cooperation with the agents was unlawful and a direct violation of a clear mandate of public policy.

**ANSWER:**    Defendant denies the allegations of Count II, paragraph 43 of the complaint.

44.    As a direct consequence of Defendant's unlawful termination of Plaintiff, she has suffered damages in the form of lost wages, benefits, mental anguish and damage to her reputation.

**ANSWER:**    Defendant denies the allegations of Count II, paragraph 44 of the complaint and denies that Plaintiff is entitled to any relief.

<u>FIRST AFFIRMATIVE DEFENSE</u>

The complaint fails to state a claim on which relief can be granted for violation of the Illinois Whistleblower Act.

<u>SECOND AFFIRMATIVE DEFENSE</u>

Plaintiff's common law retaliatory discharge claim is preempted by the Illinois Whistleblower Act.

WHEREFORE, Defendant prays the complaint be dismissed with costs and fees to Defendant.

BIOGENEX LABORATORIES, INC.

EPSTEIN BECKER & GREEN, P.C.

/S/<u>Julie Badel</u>

Julie Badel
Epstein Becker & Green, P.C.
150 N. Michigan Avenue, 35th Flr.
Chicago, IL 60601
Phone: 312.499.1418
Fax: 312.845.1998

STATE OF CALIFORNIA      )
                                )    SS
COUNTY OF CONTRA COSTA  )

## VERIFICATION

On oath, Daniyal Mirza, states that he is Director of Human Resources of BioGenex Laboratories, Inc. and that he has read the foregoing answer, which is true and correct to the best of his knowledge and belief.

_____

Subscribed and sworn to before me
a notary public, this ___ day of June 2008.

_____
Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2008, I presented the foregoing to the Clerk of the

Court for filing and uploading to the CM/ECF system which will send notification of such

filing to the following:

Anthony Pinelli
Law Offices of Anthony Pinelli
53 West Jackson Blvd., Suite 1460
Chicago, Illinois  60604
312.583.9270

_____

STATE OF CALIFORNIA            )
                               )        SS
COUNTY OF CONTRA COSTA  )

## VERIFICATION

On oath, Daniyal Mirza, states that he is Director of Human Resources of

BioGenex Laboratories, Inc. and that he has read the foregoing answer, which is true

and correct to the best of his knowledge and belief.

Subscribed and sworn to before me
a notary public, this _2_ day of June 2008.

_See attached
Jurat California
2008_

_____
Notary Public

- 12 -

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☐ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____        _____
Signature of Document Signer No. 1                    Signature of Document Signer No. 2 (if any)

State of California

County of _Contra Costa_

Subscribed and sworn to (or affirmed) before me on this

__2__ day of __June__ , 20__08__ , by
 Date           Month                          Year

(1) _Danyal Mirza_ ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(2) _____ ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _Linda Stepanovich_
                    Signature of Notary Public

LINDA STEPANOVICH
Commission # 1651869
Notary Public — California
Contra Costa County
My Comm. Expires Mar 25, 2010

Place Notary Seal Above

──────── **OPTIONAL** ────────

*Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _Verification_

Document Date: _June 2, 2008_          Number of Pages: _12 Pages_

Signer(s) Other Than Named Above: _N/A_

RIGHT THUMBPRINT
OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER #2
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827